**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BRETT JOSEPHSON, LUIS CUEVAS, TYRONE STUCKEY, and TEMUUJIN SHAARIIBUU individually, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>KALSHI, INC, KALSHIEX, LLC, KALSHI KLEAR, LLC, KALSHI KLEAR, INC., and KALSHI TRADING LLC,<br><br>*Defendants*. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No._____ |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Brett Josephson, Luis Cuevas, Tyrone Stuckey, and Temuujin Shaariibuu ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby allege the following against Defendants Kalshi, Inc., KalshiEX, LLC, Kalshi Klear LLC, Kalshi Klear, Inc., and Kalshi Trading, LLC (collectively, "Defendants" or "Kalshi"), based upon, *inter alia*, the investigation made by their counsel, and based upon information and belief, except as to those allegations and experiences specifically pertaining to Plaintiffs which are based upon their personal knowledge.

## NATURE OF THE CASE

1. This case arises out of Defendants' ownership and operation of "Kalshi," one of the world's most popular and lucrative online and app-based gambling platforms, available at https://kalshi.com/.

2. Kalshi is an illegal betting platform that Defendants label as a "prediction market," but which in reality offers illegal, unregulated wagers on the occurrence (or non-occurrence) of

future events, such as sporting events, election results, pop culture events, and even the weather. This is unregulated gambling and is prohibited under Illinois law.

3.    "Prediction market" in sports betting markets is a euphemistic rebranding by companies running the betting markets in order to advertise those markets to consumers without using the legally regulated term "gambling," which Illinois Law defines as "a game of chance or skill for money or other thing of value." 720 ILCS 5/28-1(a)(1).  A company engages in gambling when it "knowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or registered, or knowingly possesses any money which he has received in the course of a bet or wager." 720 ILCS 5/28-1(a)(5).

4.    Illinois strictly regulates gambling-related activities within its state to protect its residents from predatory gambling enterprises and has enacted various laws barring the operation of gambling platforms without regulatory approval. Defendants, however, lured by the tremendous wealth of the Illinois market, offer illegal, unregulated gambling products to Illinois residents without obtaining such approval. To deceive consumers, Defendants have branded Kalshi as a "prediction market", a label intended to rebrand unlawful gambling as supposedly harmless "event contracts."

5.    Defendants falsely represent to consumers and the public that Kalshi is legal and legitimate in every state, including in Illinois. But in reality, Kalshi is an unlicensed betting platform. As further described herein, Kalshi "knowingly owns or possesses [] book[s] . . . by means of which bets or wagers [are] recorded or registered [and] knowingly possesses [] money which [it] has received in the course of [bets and wagers]." 720 ILCS 5/28-1(a)(5).  Specifically, Kalshi players deposit money and enter into bets, winning or losing money based entirely on uncertain future events such as sports, weather, election results, and virtually any other

contingency event Kalshi can monetize. This unlicensed betting offered by Defendant is in violation of Illinois laws, and Defendants have engaged in illegal deceptive conduct, and unjustly enriched themselves by millions of dollars at the expense of Illinois consumers.

6.      Kalshi's deception does not end with its false representations to consumers that its betting platforms are "legal."  Kalshi also deceives consumers into believing that they are betting against other users, but in reality, consumers are betting against Kalshi, just like any other book making operation.

7.      Kalshi cannot operate without the help of "market makers"—companies that provide liquidity by buying and selling supposed "event contracts." In essence, market makers allow Kalshi to take the other side of bets that Illinois users are taking. These market makers enable prediction markets' illegal, unregulated gambling offerings by providing much needed liquidity. In exchange for providing liquidity, market makers are offered benefits such as reduced fees, different position limits, enhanced access, and financial incentives to provide liquidity.[1] In practice, these market makers employ the same business model as the sportsbooks the State of Illinois has extensively regulated. Defendants own and operate its own market maker, Kalshi Trading, LLC, that fills the role described above. Thus, Kalshi users are betting against the house exactly the same way it would in a brick-and-mortar casino.

8.      On April 1, 2025, the Illinois Gaming Board sent a cease-and-desist letter to Defendants, finding "reason to believe" that they were "engaging in unlicensed sports wagering in violation of the Illinois Sports Wagering Act, 230 ILCS 24, and Illinois Criminal Code, 720 ILCS 5/28-1(a)." *See* attached Exhibit A.  Defendants have also received similar cease and desist letters from eight other States including Arizona, Connecticut, Maryland, Montana, Nevada, New Jersey,

---

[1] https://help.kalshi.com/markets/market-maker-program

New York, and Ohio.

9.      By operating and profiting from illegal gambling, Defendants violate the Illinois Sports Wagering Act 230 ILCS 24, the Illinois Criminal Code, 720 ILCS 5/28-1(a), the Illinois Consumer Fraud and Deceptive Business Practices Act 815 505/1, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1.

10.     Like many states, Illinois offers an additional safeguard against illegal, unregulated gambling through the Illinois Loss Recovery Act, 720 ILCS 5/28-8 ("the Act"). The Act permits a losing party to recover losses exceeding $50, along with fees and costs, from the winning party.

11.     Defendants have operated in Illinois without regard to the State's legal limits for years, collecting tens of millions of dollars from Illinois gamblers. Under the Act, each time Defendants caused a gambler in Illinois to suffer gambling losses of at least $50, that person had the right to sue to recover their losses, plus costs.

## PARTIES

12.     At all times material hereto, Plaintiff Brett Josephson has been a resident and citizen of Illinois and is domiciled in Chicago, Cook County, Illinois.

13.     At all times material hereto, Plaintiff Luis Cuevas has been a resident and citizen of Illinois and is domiciled in Chicago, Cook County, Illinois.

14.     At all times material hereto, Plaintiff Tyrone Stuckey has been a resident and citizen of Illinois and is domiciled in Northlake, Cook County, Illinois.

15.     At all times material hereto, Plaintiff Temuujin Shaariibuu has been a resident and citizen of Illinois and is domiciled in Northbrook, Cook County, Illinois.

16.     Defendant Kalshi, Inc. is a Delaware corporation headquartered at 594 Broadway, Suite 407, New York City, New York 10012, operates its business primarily through its

headquarters in New York, and is a citizen of New York. Users may bet on sports, weather, election results, and virtually any other contingency event Kalshi can monetize.

17.   On information and belief, Kalshi, Inc. is the parent company of all other Kalshi entities and operates a so-called "prediction market," allowing Illinois residents to place illegal, unregulated wagers in the form of supposed "event contracts."

18.   Defendant KalshiEX, LLC is a Delaware corporation headquartered at 594 Broadway, Suite 407, New York City, New York 10012, operates its business primarily through its headquarters in New York, and is a citizen of New York. On information and belief, KalshiEX, LLC is a wholly owned subsidiary of Kalshi, Inc., and, in concert with the other Kalshi entities, acts to allow Illinois residents to place illegal, unregulated wagers in the form of supposed event contracts.

19.   Defendant Kalshi Klear, Inc. is a Delaware corporation headquartered at 594 Broadway, Suite 407, New York City, New York 10012, operates its business primarily through its headquarters in New York, and is a citizen of New York. On information and belief, Kalshi Klear, Inc. is a wholly owned subsidiary of Kalshi, Inc. and operates as the holding company for Kalshi's clearing organization, and acts to allow Illinois residents to place illegal, unregulated wagers in the form of supposed event contracts.

20.   Defendant Kalshi Klear, LLC is a Delaware corporation headquartered at 594 Broadway, Suite 407, New York City, New York 10012, operates its business primarily through its headquarters in New York, and is a citizen of New York. On information and belief, Kalshi Klear, LLC is a wholly owned subsidiary of Kalshi, Inc. that operates as a clearing organization, and acts to allow Illinois residents to place illegal, unregulated wagers in the form of supposed event contracts.

21. Defendant Kalshi Trading, LLC is a Delaware corporation headquartered at 594 Broadway, Suite 407, New York City, New York 10012, operates its business primarily through its headquarters in New York, and is a citizen of New York. On information and belief, Kalshi Trading, LLC is a wholly owned subsidiary of Kalshi, Inc. that operates as a market maker for Kalshi, and acts to allow Illinois residents to place illegal, unregulated wagers in the form of supposed event contracts.

22. On information and belief, Kalshi, Inc. actively controls and operates KalshiEx, LLC, Kalshi Klear, Inc., Kalshi Klear, LLC, and Kalshi Trading, LLC and exercises sufficient control over those entities to render them as agents or alter egos of Kalshi, Inc.

23. Kalshi actively markets and promotes the Kalshi online and app-based platform to citizens and residents of Illinois and conducts substantial business within Illinois and Cook County.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C §1332(d), this Court has subject matter jurisdiction because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,00,000.00, (2) the proposed Class is comprised of at least 100 members, and (3) complete diversity exists between at least one plaintiff, or class member, or class member and one defendant.

25. This Court has personal jurisdiction over the defendants because Kalshi regularly conducts business and activities in this district, including activities that form the basis for the claims here, and a substantial part of the acts and omissions complained of occurred in this district. Moreover, Plaintiffs reside in this district.

26. Venue is proper in this district under 28 U.S.C §1391 because Plaintiffs reside in

this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district, including Kalshi's unlawful actions.

### FACTUAL BACKGROUND AND COMMON ALLEGATIONS

**I.**      ***The Problem of Unregulated Online and App-Based Gambling.***

27.      Gambling is one of the oldest and most heavily regulated human behaviors. Even before the proliferation of science, religions across the world have recognized the inherent addictive nature of playing games of chance and banned them through biblical injunctions.

28.      As religious authority gave way to democratic governments, the vast majority of states in this country, including Illinois, have enacted legislation prohibiting or strictly regulating gambling activities. These states have recognized that gambling poses a public health risk, as scientific research has confirmed and shed further light on the perils of gambling, ranging from mental health issues to physical, financial, and interpersonal problems.[2]

29.      However, with recent technological advances, many casinos and other gambling operators, such as Kalshi, have skirted these regulations through online websites and apps. Since 2018, the number of states with legal, regulated sportsbooks has surged from 1 to 38, with total sports wagers increasing from $4.9 billion in 2017 to $121.1 billion in 2023.[3] This proliferation has been accompanied by a dramatic rise in gambling addiction cases.[4]

30.      Gambling addiction is a public health crisis. Approximately 2.5 million adults in the U.S. suffer from severe gambling problems, while an additional five to eight million

---

[2]      Harvard Magazine, *Governing Games of Chance* (Feb. 14, 2025), https://www.harvardmagazine.com/2025/03/harvard-research-gambling-publichealth-crisis.

[3]      https://today.ucsd.edu/story/study-reveals-surge-in-gambling-addiction-following-legalization-of-sports-betting?utm_ (last accessed July 29, 2025).

[4]      *See id.*

experiencing significant issues.[5] Alarmingly, individuals with gambling disorders are 15 times more likely to commit suicide than the general population.[6]

31.    Between 2018 and 2021, the National Council on Problem Gambling (NCPG) estimated that the risk of gambling addiction grew by 30%. NCPG has also seen significant increases in calls, texts and chats to the National Problem Gambling Helpline—roughly a 45% increase in calls between 2021 and 2022.[7]

32.    The addiction and fallout related thereto is not limited to gamblers. It has a ripple effect that negatively impacts spouses, partners, children, and employers. Moreover, despite the growing prevalence of gambling addiction, funding for treatment remains insufficient.

33.    Treating online gambling addition poses challenges that are different from other forms of addiction. For an individual with substance use disorder, safety measures like disposing of all alcohol or drug paraphernalia or avoiding triggering social events are key to treatment. Things are not so clear-cut when treating digital gambling because for most people, mobile devices have become a necessity of life. So, it's not a question of avoiding the drive to the casino, but instead, a constant struggle to avoid the temptation to gamble from home, work, restaurants, the grocery store, while on vacation, and anywhere else where the gambler's device can receive a signal. Furthermore, unlike the billions of dollars of federal funding dedicated to alcohol, tobacco,

---

[5]    https://news.harvard.edu/gazette/story/2025/01/online-gambling-is-on-the-rise-panel-says-we-need-to-act-now/#:~:text=The%20National%20Council%20on%20Problem%20Gambling%20estimates%20that%20about%202.5,of%20callers%20is%20skewing%20younger. (last accessed July 29, 2025).

[6]https://www.who.int/news-room/fact-sheets/detail/gambling#:~:text=A%20Swedish%20study%20estimated%20that,the%20general%20population%20(4) (last accessed July 29, 2025).

[7]https://www.ncpgambling.org/news/ncpg-statement-on-the-betting-on-our-future-act/    (last accessed July 29, 2025).

and drug addiction programs, there are no federal funds allocated to support problem gambling services.

## II.    *"Prediction Markets" Like Kalshi Violate Illinois Law.*

34.    Kalshi has helped fuel the gambling addiction crisis in this county, including in Illinois, through its offering of unregulated betting.

35.    Kalshi is a private company founded in 2018 by Tarek Mansour and Luana Lopes Lara.

36.    Kalshi contends that its so-called "prediction market" allows Illinois residents to purchase supposed "event contracts." Event contracts are "agreements, contracts, transactions, or swaps in excluded commodities that are based upon the occurrence, extent of an occurrence, or contingency," "other than a change in the price, rate, value, or levels of a commodity." 7 U.S.C. § 7a-2(c)(5)(C)(i).

37.    Kalshi means "everything" in Arabic, and consumers can indeed wager on "everything" on Kalshi under the guise of "event contracts," as users can bet on the outcome of sports, politics, the weather, pop culture events, and other things.

38.    For each supposed event contract, Kalshi poses a "Yes" or "No" question for a future event. Users can buy either option at a market price. When each supposed event contract adds up to exactly $1, an "event contract" is formed. The parties then await resolution of the underlying event.

39.     For example, as illustrated below, users can wager on whether the San Francisco 49ers or Indianapolis Colts will win the December 22, 2025 football game. If the specified outcome occurs, users holding the correct position will be paid the value of their contract, while users that wagered incorrectly lose the money they gambled.



40.     Kalshi profits multiple ways from this type of offering. It charges transaction fees on each wager and acts as the counterpart to every bet. When an event is resolved, Kalshi pays winning users and bears the risk of loss if losing users fail to pay, making Kalshi financially responsible for each wager.

41.     The event contracts depend on the liquidity provided by institutional market makers which buy and sell event contracts. The market makers employ the same business model as the sportsbooks this State has extensively regulated. When an Illinois resident purchases an event contract on Kalshi, the other side of the wager is most likely money provided by Kalshi's own market maker. Thus, Illinois consumers are betting against the house—Kalshi. This role is further underscored by the fact that Kalshi acts as the market maker, supplying liquidity for both sides of the bets in the market.

42.     Kalshi's business model is the same as a traditional bookmaker, as shown in the below comparison between DraftKings (pictured first), a sportsbook, and Kalshi (pictured second).

Traditional bookmakers minimize their risk by adjusting their betting lines to incentivize roughly equal wagers on both sides of a bet. In the markets shown above, users are invited to stake money on whether a particular team—Indianapolis or Houston—will win a specific football game, with prices reflecting the implied probability of that outcome (e.g., 86/83% for Houston and 14/17% for Indianapolis). As with traditional bookmakers, like DraftKings, Defendants adjust prices to balance demand on each side of the wager, ensuring Kalshi's exposure is minimized regardless of the game's actual result.





43.     Kalshi further de-risks its operation by routing all trades through its affiliated

clearinghouse, which algorithmically equalizes positions on both sides of the wager, guaranteeing that Kalshi collects fees while bearing no meaningful risk tied to the sporting event itself.

### III.    *Market Makers Book Make for Kalshi.*

44.    Kalshi markets these event contracts as peer-to-peer transactions in which users are trading against one another based on differing predictions of future events. In reality, because Kalshi's market maker consistently supplies liquidity on both sides of each event contract, consumers are not meaningfully betting against other participants but against the house itself.

45.    Kalshi's representation leads users to believe that it merely facilitates trades and does not act as a counterparty, as shown below:



Kalshi operates like a stock exchange for events, matching individuals who have differing opinions on event contracts with one another. On Kalshi, you are always trading against another member of the platform, not the exchange itself.

You can think of every trade on the platform as a deal taking place between two participants: a "maker" and a "taker". The maker is the first one to the table: They declare a side they're willing to buy (Yes or No), how much they're willing to pay, and how many contracts they are looking to buy at that price. Takers can see all available offers and match with the most generous one.

46.    Only in the fine print does Kalshi actually disclose that Kalshi Trading, LLC, an entity owned by and operating in concert with Kalshi, is a player on the platform:

Today most participants in Kalshi fall into the first two categories. Additionally, **the majority of participants on Kalshi today are retail traders**, as opposed to institutional traders. Another significant player on the exchange is Kalshi Trading. Kalshi Trading is a separate entity from Kalshi Exchange - a different company with completely separate operations, and subject to strict informational barriers that prevent any non-public exchange information from being shared; they are a participant on the exchange just like everyone else.

47.    This statement is false and misleading.  For example, Kalshi Trading, LLC is not a "participant on the exchange just like everyone else."  As set forth herein, Kalshi Trading, LLC

serves as Kalshi's market maker, and this statement otherwise does not disclose the true role that Kalshi Trading, LLC plays in the Kalshi operations.

48.    By relegating this material fact to inconspicuous fine print, and by otherwise misrepresenting from consumers the nature of Kalshi Trading, LLC, Kalshi intentionally conceals from users that they are frequently wagering against Kalshi's own trading arm rather than against other consumers.

49.    By Kalshi's own admission, its own market maker, Kalshi Trading, LLC, plays a key role in providing liquidity on both sides of these wagers. [8]

50.    Kalshi's market makers operate with structural advantages over consumers, including proprietary data, sophisticated statistical models, preferential access to Kalshi's systems, and reduced or zero transaction fees. These advantages significantly limit market maker risk while exposing users to near-certain losses, even as consumers are led to believe they are simply betting against other ordinary participants.



---

[8] https://x.com/luanalopeslara/status/199441807162936978

51.     Market makers sometimes sense when the market has mispriced a wager and it'll favor one side over another. To minimize the risk of losing in these situations, market makers employ entire research teams who work on proprietary statistical models. This allows them to estimate future events with greater accuracy than any individual gambler could hope to match. Kalshi also provides market makers with "financial benefits, reduced fees, differing position limits, and enhanced access." These perks greatly reduce market makers' actual risk.

52.     As Kalshi's research and analysis of consumer behavior and betting patterns expanded, Kalshi introduced so-called "combo" bets to increase engagement and revenue. These "combo" bets are functionally identical to traditional parlays and require consumers to correctly predict multiple independent outcomes in a single wager. If any one prediction is incorrect, the entire bet is lost, even if several other predictions are correct.

53.      Combo bets also do not pay true odds that consumers would expect when making their wagers. As seen below, a combo of three outcomes with odds of 57%, 51% and 75%, pays out 41 dollars for a $10 wager. The implied probability of those wagers together should equal $45.90 for a $10 wager.



54.      Combo bets significantly increase the House's advantage because they multiply the probability of consumer loss while allowing Kalshi and its affiliated and institutional market

makers to price each leg, control the combined payout, and capture pricing spreads and fees.

55.     The various betting methods ensure market makers extract essentially all of the potential arbitrage available on Kalshi, making it nearly impossible for individual gamblers to profit over time. Roughly 95% of sports bettors lose money and this doesn't even take into account the fees that Kalshi is charging individuals on its site to place wagers.

56.     Market makers, including Kalshi Trading, LLC, operate just like traditional sportsbooks securing risk-free profits by arbitraging the "spread". Market makers are large institutional investors with large teams and sophisticated models. Just like traditional sportsbooks, market makes have relationships with the platform itself that guarantees them financial perks.

**IV.    *Kalshi Deceptively Markets its Illegal Sports Betting as a Legal "Prediction Market."***

57.     Kalshi markets its website to consumers as a "prediction market" platform, creating the false impression that its wagers are lawful trading rather than prohibited sports wagering.





| | Legal & regulated in the US | | Grow your entire portfolio |
| Trade on the election, Oscars, Bitcoin, and more | | 3.25% APY on all your cash and positions |

58. Kalshi repeatedly advertises its contests as "markets" where you can trade and grow your portfolio.

59. In September 2025, 90% of Kalshi's volume was from illegal sports betting, with consumers placing approximately $2 billion in sports bets on the unlicensed platform.[9]

60. A reasonable consumer, seeing Kalshi marketed as a "prediction market", would be misled into believing the wagers offered are lawful and materially different from traditional sports betting.

61. In truth, Kalshi's wagers are sports wagered prohibited by Illinois law. By misrepresenting and concealing the true nature of its wagers, Kalshi engages in fraudulent and deceptive conduct that violates the Illinois Consumer Fraud and Deceptive Business Practices Act and Illinois Uniform Deceptive Trade Practices Act.

62. For reasons including those set forth above, Kalshi's online and app-based platforms constitute unregulated betting in Illinois.[10]

63. The National Council on Problem Gambling, a non-profit that seeks to minimize the economic and social costs associated with gambling addiction, also wrote a letter raising concerns that prediction markets such as Kalshi could lead to harms for problem gamblers because of insufficient age restrictions, betting limits, or other safeguards for sports betting. The Council stated that "[f]rom a problem gambling standpoint, betting on futures is functionally gambling."[11]

64. Even Kalshi's own lawyers have argued that laws regulating prediction markets do

---

[9] *See* Lev Akabas, *Kalshi's Volume Has Been 90% Sports During Football Season*, Sportico (Oct. 3, 2025), https://www.sportico.com/business/sports-betting/2025/kalshi-nfl-football-trade-bet-volume-1234872696/

[10] 230 ILCS 45/25-20(a); 720 ILCS 5/28-1(a)(12).

[11] National Council on Problem Gambling, *Re: Prediction Markets Roundtable*, March 10, 2025, https://www.cftc.gov/media/11956/NationalCouncilonProblemGambling031025/download.

not cover sports betting. A January 2024 Kalshi brief acknowledged that regulators did not want event contracts to "launder casino-style or sports gambling through the derivatives markets."[12] According to Kalshi, "gaming" referred to contracts contingent on games—for example, "whether a certain team will win the Super Bowl."[13] In November 2024, Kalshi again stated in a filing that a wager is illegal gambling "if it is contingent on a game or a game-related event."[14] The filing explained: "The classic example is a contract on the outcome of a sporting event; as the legislative history directly confirms, Congress did not want sports betting to be conducted on derivatives markets."[15]

### V.     *Illinois Regulates Online Gambling and Kalshi Has Not Complied with the Regulations.*

65.     Illinois has not imposed a blanket ban on gambling but instead enacted the Illinois Gambling Act to permit lawful gambling under a comprehensive regulatory scheme designed to protect Illinois citizens and ensure fair operations. Illinois law provides multiple avenues through which an entity may seek authorization to engage in gambling or wagering activity, each of which requires compliance with detailed licensing, permitting, ethical, and operational standards.[16] Kalshi has declined to pursue or comply with any of these lawful pathways.

66.     Illinois defines gambling broadly. A party engages in unlawful gambling if it knowingly owns or possesses any book, instrument, or apparatus by means of which bets or wagers

---

[12] *KalshiEX LLC v. Commodity Futures Trading Commission.* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, 1:23-cv-03257-JMC, Dkt. 17-1 at 16, (D.D.C. Jan. 25, 2024).

[13] *Id.*

[14] *KalshiEX LLC*, Plaintiff-Appellee, v. *Commodity Futures Trading Commission*, Defendant-Appellant, No. 23-cv-03257-JMC, Brief of KalshiEx LLC (D.C. Cir. Nov. 15, 2024).

[15] *Id*.

[16] 230 Ill. Comp. Stat. 10/6(a)

have been, or are, recorded or registered; knowingly sells pools upon the result of any game, contest, or event of skill or chance; or knowingly transmits information concerning wagers, betting odds, or changes in betting odds.[17] A violation of this statute is a criminal offense classified as a Class 4 felony.

67. Illinois law further provides that it is unlawful to knowingly establish, maintain, or operate an Internet platform that permits a person to wager money or something of value on the outcome or occurrence of an event unless expressly licensed and authorized by the Illinois Gaming Board ("IGB").[18] The IGB has neither licensed nor authorized Kalshi to engage in Internet wagering activity.

68. Illinois cautiously and deliberately expands gambling permissions through detailed statutory enactments. For example, The Illinois Sports Wagering Act of 2019, permits certain individuals 21 and older to engage in regulated sports wagering, but expressly prohibits all other unlicensed wagering activity, providing that "no person may engage in any activity in connection with sports wagering in this State unless all necessary licenses have been obtained in accordance with this Act and the rules of the Board and the Department." Kalshi does not have a license to operate in compliance with this act.

69. By failing to comply with the licensing and regulatory requirements set forth under Illinois law, Kalshi is operating an illegal gambling enterprise under the Sports Wagering Act and the Illinois Criminal Code.

70. The Illinois Sports Wagering Act provides that "No person may engage in any activity in connection with sports wagering in this State unless all necessary licenses have been

---

[17] 720 ILCS 5/28-1(a)(1)-(2).

[18] 720 ILCS 5/28-1(a)(12)

obtained in accordance with this Act and the rules of the Board and the Department." 230 ILCS 45/25-20(a). The Act further provides that "the operation of sports wagering is only lawful when conducted in accordance with the provisions of this Act and the rules of the Illinois Gaming Board and the Department of the Lottery." 230 ILCS 45/25-25(a). As discussed at length herein, Defendants engage in sports wagering in this State without the necessary licenses. 230 ILCS 45/25-20(a). Defendants' operations are unlawful because they are not "conducted in accordance with the provisions of [the Illinois Sports Wagering Act]." 230 ILCS 45/25-25(a).

71. The Illinois Criminal Code provides that "a person commits gambling when he or she . . . [*inter alia*] knowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or registered, or knowingly possesses any money which he has received in the course of a bet or wager. Section 720 ILCS 5/28-1(a)(5). As discussed at length herein, Defendants are engaged in illegal gambling because they "own and possess the books [by which Kalshi customers'] bets and wagers are recorded," and because Defendants "knowingly possess[] money which [they receive in the course of Kalshi customers'] bet[s] and wager[s]." *Id.*

## VI.    *Illinois's Loss Recovery Act Allows Private Parties to Sue for Illegal Gambling.*

72. Illinois law expressly renders gambling contracts void and unenforceable.[19]

73. Any promise, contract, agreement, security, or obligation in which any part of the consideration consists of money or something of value won or obtained in violation of Illinois gambling laws is deemed null and void as a matter of law.[20]

74. Illinois' gambling prevention statute, 720 ILCS 5/28-8, allows for private parties to

---

[19] 720 ILCS 5/28-7

[20] *Id.*

sue for illegal gambling. It provides that "any person who by gambling" loses "$50 or more" may bring "a civil action against the winner thereof, with costs, in the circuit court."[21]

75.     Kalshi's event contracts, which arise from unlawful gambling activity conducted without authorization under Illinois law, confer no enforceable rights and are legally invalid from their inception and are recoverable under Illinois law.

## <u>FACTS SPECIFIC TO PLAINTIFFS</u>
### *Plaintiffs' Experiences*

**I.    *Plaintiff Brett Josephson's Experience*.**

76.     Brett Josephson is an Illinois consumer who resides in Illinois and used Kalshi's platform while located in Illinois.

77.     Around November 2025, Mr. Josephson began using Kalshi after first learning of the platform through a physical billboard and numerous social media advertisements on Instagram and Facebook.

78.     After learning about the platform's wide variety of event offerings, Mr. Josephson decided to create an account and place wagers on the platform.

79.     Kalshi did not inform Mr. Josephson that its games were illegal and that Kalshi is in fact an unlicensed gambling platform.

80.     Kalshi did not inform Mr. Josephson that he was wagering against Kalshi itself or against sophisticated institutional market makers functioning as the House.

81.     Mr. Josephson placed wagers on Kalshi's illegal and unlicensed gambling platform and has net losses of several thousand dollars.

82.     Mr. Josephson suffered financial losses as a direct and proximate result of Kalshi's

---

[21] 720 ILCS 5/28-8(a)

illegal and deceptive conduct and operations.

## II.    *Plaintiff Luis Cuevas' Experience.*

83.    Luis Cuevas is an Illinois consumer who resides in Illinois and used Kalshi's platform while located in Illinois.

84.    Around November 2024, Mr. Cuevas began using Kalshi after first learning of the platform through numerous social media ads.

85.    After learning about the platform's wide variety of event offerings, Mr. Cuevas decided to create an account and place wagers on the platform

86.    Kalshi did not inform Mr. Cuevas that its games were illegal and that Kalshi is in fact an unlicensed gambling platform.

87.    Kalshi did not inform Mr. Cuevas that he was wagering against Kalshi itself or against sophisticated institutional market makers functioning as the House.

88.    Mr. Cuevas placed wagers on Kalshi's illegal and unlicensed gambling platform and had net losses of several hundred dollars.

89.    Mr. Cuevas suffered financial losses as a direct and proximate result of Kalshi's deceptive conduct and unlawful operations.

## III.    *Plaintiff Tyrone Stuckey's Experience.*

90.    Tyrone Stuckey is an Illinois consumer who resides in Illinois and used Kalshi's platform while located in Illinois.

91.    Around October 2025, Mr. Stuckey began using Kalshi after first learning of the platform through numerous advertisements that kept popping up while he was gaming online.

92.    After learning about the platform's wide variety of event offerings, Mr. Stuckey decided to create an account and place wagers on the platform.

93.     Kalshi did not inform Mr. Stuckey that its games were illegal and that Kalshi is in fact an unlicensed gambling platform.

94.     Kalshi did not inform Mr. Stuckey that he was wagering against Kalshi itself or against sophisticated institutional market makers functioning as the House.

95.     Mr. Stuckey placed wagers on Kalshi's illegal and unlicensed gambling platform and had net losses exceeding $50.

96.     Mr. Stuckey suffered financial losses as a direct and proximate result of Kalshi's illegal and deceptive conduct and operations.

**IV.     *Plaintiff Temuujin Shaariibuu's Experience.***

97.     Temuujin Shaariibuu is an Illinois consumer who resides in Illinois and used Kalshi's platform while located in Illinois.

98.     Around November 2024, Mr. Sharriibuu began using Kalshi after first learning of the platform through an advertisement on Facebook.

99.     After reviewing Kalshi's online marketing and learning about the platform's wide variety of event offerings, Mr. Sharriibuu decided to create an account and place wagers on the platform.

100.    Kalshi did not inform Mr. Sharriibuu that its games were illegal and that Kalshi is in fact an unlicensed gambling platform.

101.    Kalshi did not inform Mr. Sharriibuu that he was wagering against Kalshi itself or against sophisticated institutional market makers functioning as the House.

102.    Mr. Sharriibuu placed wagers on Kalshi's illegal and unlicensed gambling platform and has net losses exceeding $50.

103.    Mr. Sharriibuu suffered financial losses as a direct and proximate result of Kalshi's

illegal and deceptive conduct and operations.

## CLASS ALLEGATIONS

104.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b) on behalf of himself and all others similarly situated defined as follows:

105.    The Class is defined as follows:

All Illinois residents who, during the applicable limitations period, have lost money wagering on Kalshi's mobile or web platforms.

106.    Excluded from the Class is: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Kalshi, its subsidiaries, parents, successors, predecessors, and any entity in which Kalshi or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Kalshi's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

107.    **Numerosity.** Upon information and belief, there are thousands of Class members, so joinder of all members is impracticable. The precise number of class members and their identities are unknown to Plaintiffs currently but may be ascertained from Kalshi's business records and other third-party sources.

108.    **Commonality.** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

      a.    Whether the wagers on Kalshi are prohibited gambling as defined under Illinois law;

b.   Whether Kalshi engaged in the conduct alleged in the Complaint;

c.   Whether Kalshi violates the applicable law listed below in Counts I, II, III, and IV;

d.   Whether Kalshi violates statutes analogous to those alleged herein applicable;

e.   Whether Plaintiffs and Class members wagered and lost money on Kalshi;

f.   The amount of money or other things of value wagered and lost by Plaintiffs and Class members on Kalshi;

g.   Whether Kalshi engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Kalshi;

h.   Whether Kalshi's unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Illinois were likely to deceive Class members;

i.   Whether Plaintiffs and the other Class members were damaged by Kalshi's conduct; and

j.   Whether Plaintiffs and the other Class members are entitled to restitution or other relief.

109.   **Typicality**. Plaintiffs' claims are typical of the claims of the Class because they were users of Kalshi who made wagers on the site as a result of Kalshi's unlawful and wrongful conduct. The factual and legal basis of Kalshi's liability to Plaintiffs and to the other Class members are the same, resulting in injury to Plaintiffs and to all of the other members of the Class. Plaintiffs and the other members of the Class have suffered harm and damages due to Kalshi's unlawful and wrongful conduct.

110.   **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in

prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

111.    **Predominance & Superiority.** Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Kalshi, so it would be impracticable for members of the proposed Class to individually seek redress for Kalshi's wrongful conduct.

112.    **Final Declaratory or Injunctive Relief.** Kalshi has acted and failed to act on grounds generally applicable to Plaintiffs and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

**FIRST CAUSE OF ACTION**
**Illinois Gambling Loss Recovery Statute**
**720 ILCS 5/28-8**
**(Against All Defendants)**
***(On Behalf of Plaintiffs and the Class)***

113.    Plaintiffs repeat, reallege, and incorporate the above allegations of Paragraphs 1-112 by reference as if fully set forth herein.

114.    Defendants' actions as described herein constitute unlawful gambling in violation of the Illinois Sports Wagering Act, 230 ILCS 24 and the Illinois Criminal Code, 720 ILCS 5/28-

26

1(a).

115.    Plaintiffs bring this count individually and on behalf of the Class under 720 ILCS 5/28-8, which was enacted to effectuate the State's public policy against unlawful gambling and to provide restitution to consumers.

116.    720 ILCS 5/28-8 states that "any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs."

117.    As alleged herein Defendants' conduct constitutes illegal gambling under Illinois law because they knowingly operated an unlicensed Internet wagering platform in Illinois, recorded and transmitted wagers and odds, misrepresented the legality and peer-to-peer nature of their platform, and entered into gambling contracts that are void and unenforceable under Illinois law.

118.    Upon information and belief, thousands of individuals within Illinois have lost money gambling on Kalshi. The identify and precise number of such gamblers is within the unique possession of Kalshi.

119.    Defendants are gambling "winners" within the meaning of 720 ILCS 5/28-8(a).

120.    Plaintiffs each qualify as a "person" authorized to sue for the recovery of losses at gaming within the meaning of 720 ILCS 5/28-8(b). Plaintiffs have not colluded with any other victims in bringing this action.

**SECOND CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Trade Practices Act**
**815 ILCS 505/1 et seq.**
**(Against All Defendants)**
*(On behalf of Plaintiffs and the Class)*

121. Plaintiffs repeat, reallege, and incorporate the allegations of Paragraphs 1-112 above by reference as if fully set forth herein.

122. The Illinois Consumer Fraud and Deceptive Trade Practices Act prohibits unfair or deceptive acts or practices, including misrepresentations, omissions of material fact, and other conduct that offends public policy.

123. Defendants engaged in deceptive and unfair acts and practices by, among other things:

    a. Marketing and representing their platform as lawful, regulated and complaint with applicable law,

    b. Failing to disclose that Kalshi's offerings constituted illegal gambling under Illinois law,

    c. Mischaracterizing wagers as benign "prediction markets" or "event contracts" without disclosing their true legal and economic nature

    d. Obscuring the role of affiliated market makers and Kalshi's own profit-generating mechanisms, and

    e. Deceptively calculated the odds on "combos" to pay out less than the true odds of users selections

    f. Inducing Illinois consumers to wager money they otherwise would not have wagered.

124. Defendants' representations and omissions were material, in that a reasonable consumer would have considered the legality, regulatory statutes, and nature of the wagers import in deciding whether to participate.

125. Defendants intended for Plaintiffs and other Illinois consumers to rely on these

28

representations and omissions.

126. Defendants' conduct occurred in the course of trade or commerce, including the marketing and sale of services to Illinois residents.

127. Defendants' conduct was unfair, immoral, oppressive, and offensive to public policy, particularly Illinois's strong public policy regulating and restricting gambling activity.

128. As a direct and proximate result of Defendants violations of 815 ILSC 510/1 et. Seq, Plaintiffs suffered actual damages including but not limited to monetary losses, fees, and wagering losses.

129. Plaintiffs seek all relief available under 815 ILSC 510/1 *et. seq*, including actual damages, punitive damages, attorneys' fees and costs, injunctive and declaratory relief, and any other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS 510/1 et. Seq**
**(Against All Defendants)**
***(On behalf of Plaintiffs and the Class)***

130. Plaintiffs repeat, reallege, and incorporate the allegations of Paragraphs 1-112 above by reference as if fully set forth herein.

131. Defendants engaged in deceptive trade practices in violation of 815 ILCS 510/2, including but not limited to:

    a. Causing likelihood of confusion or misunderstanding as to the nature, legality, and characteristics of their services,

    b. Deceptively calculated the odds on "combos" to pay out less than the true odds of users selections

    c. Representing that their services have characteristics, uses, or legal status that they

29

do not have, and

 d. Engaging in other conduct that creates a likelihood of confusion or

misunderstanding among consumers.

132. Defendants' deceptive practices occurred in the course of business and have a likelihood of repetition, affecting not only Plaintiffs but the general public.

133. Plaintiffs have been and will likely continue to be damaged by Defendants' deceptive trade practices.

134. Plaintiffs seek injunctive relief pursuant to 815 ILCS 510/3, enjoining Defendants from continuing the deceptive practices alleged herein, as well as costs and attorney's fees as permitted by law.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(Against All Defendants)**
***(On behalf of Plaintiffs and the Class)***

135. Plaintiffs repeat, reallege, and incorporate the above allegations of Paragraphs 1-112 by reference as if fully set forth herein.

136. Plaintiffs and the Class members have conferred a benefit upon Defendants in the form of the money wagered on Kalshi's illegal gambling platform.

137. Defendants appreciate and have knowledge of the benefits conferred upon it by Plaintiffs and the Kalshi Class.

138. Under principles of equity and good conscience, Defendants should not be permitted to retain the money obtained from Plaintiffs and the Class members, which Defendants have unjustly obtained as a result of its unlawful operation of its "prediction market". As it stands, Defendants have retained millions of dollars in profits generated from its unlawful wagers and should not be permitted to retain those ill-gotten profits.

139.    Accordingly, Plaintiffs and the Class members seek full disgorgement of all money Defendants have retained as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of all others similarly situated, the following relief:

1.    For an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, defining the Class as requested herein, appointing Plaintiffs as class representatives and their counsel as class counsel;

2.    Awarding Plaintiffs all economic, monetary, actual, consequential, compensatory, and punitive damages available at law and to be determined by proof;

3.    Awarding Plaintiffs and the class members appropriate relief, including actual and statutory damages;

4.    Awarding Plaintiffs' reasonable attorneys' fees, costs, and other litigation expenses;

5.    Awarding pre- and post-judgment interest, as allowable by law;

6.    For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

7.    Declaratory and equitable relief, including restitution and disgorgement;

8.    For public injunctive and declaratory relief as the Court may deem proper; and

9.    Awarding such further and other relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: January 8, 2026

Respectfully submitted,

/s/ *Russell Busch*_____
Russell Busch
**BRYSON HARRIS SUCIU & DEMAY PLLC**
979 Green Bay Road
Highland Park, Illinois 60035
Telephone: (630) 796-0903
Email: rbusch@brysonpllc.com

James R. DeMay*
J. Hunter Bryson*
**BRYSON HARRIS SUCIU & DEMAY PLLC**
900 West Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Email: jdemay@brysonpllc.com
Email: hbryson@brysonpllc.com

*Application for *pro hac vice* forthcoming

*Attorneys for Plaintiffs*

32